688 P.2d 993
**STATE of Arizona, Appellee,**

v.

**Jerome John NOLEEN, Sr., Appellant.**

**No. 6033.**

Supreme Court of Arizona,
In Banc.

Sept. 27, 1984.

Robert K. Corbin, Atty. Gen., by William J. Schafer III and Barbara A. Jarrett, Asst. Attys. Gen., Phoenix, for appellee.

H. Allen Gerhardt, Jr., Mesa, for appellant.

CAMERON, Justice.

The defendant, Jerome John Noleen, Sr., was found guilty by a jury of first degree murder with a deadly weapon, A.R.S. §§ 13–1105, 13–1101, 13–703, and 13–604 and attempted first degree murder with a deadly weapon, A.R.S. §§ 13–1001, 13–1105, 13–1101, 13–701, 13–702, 13–801, and 13–604. He was sentenced to a term of life imprisonment without possibility of parole for twenty-five years for the murder and to

a consecutive term of twenty-one years for the attempted murder. He appeals, raising only the question of adequate representation of counsel. We have jurisdiction pursuant to A.R.S. § 13–4031 and Ariz. Const. Art. 6, § 5(3).

The issue we must resolve on appeal is:

Do any of the following acts of counsel, independently or in combination, constitute grounds for reversal on the basis of ineffective assistance of counsel?

a. Presentation of untimely, oral motions in limine;

b. Failure to object to hearsay testimony of the medical examiner testifying for the state;

c. Failure to request appropriate relief upon alleged misconduct by the prosecutor;

d. Failure to object to improper impeachment evidence;

e. Failure to challenge the voluntariness of the defendant's statements;

f. Failure to move to suppress evidence of ammunition and the gun on Fourth Amendment grounds;

g. Failure to object to photographs;

h. Failure to request instructions on alleged lesser-included offenses;

i. Failure to request a self-defense instruction; and

j. Failure to object to giving a flight instruction.

The facts follow. The defendant and the attempt victim, Barbara Hohnstein (Noleen), were married and had two small children. The defendant's two older children also lived with them. Sometime in 1982 Barbara moved out of the house with the two small children. She obtained an order for child support, which the defendant never paid. On 30 December 1982 the defendant invited her and the children over to his house to give the children their Christmas presents. Barbara asked her mother, Mina Belle Hohnstein (the murder victim), to accompany her. Barbara testified that while one of the children was opening a present, the defendant lured her back into his bedroom. He took out the .38 caliber pistol he kept there and shot her in the face. She testified he dragged her into the bedroom and locked the door. She heard the defendant shoot her mother and leave. She testified he later returned, briefly spoke with her, and left again.

The defendant testified that while the child was opening the present, Barbara went into his bedroom, took the gun she knew he kept there, and threatened him with it. He claimed he attempted to take the gun away but during the struggle Mina Belle was shot in the lower abdomen and then Barbara was shot in the face. He further testified he "freaked out" and left without calling for help.

The defendant's car was found eight miles south of Baseline Road on Interstate 10. He was arrested on 5 January 1983 in Midland, Texas. He had registered under his own name at a motel across the street from the place of employment of one of his ex-wives, Susan Lindquist. The defendant claims he does not remember how he traveled to Texas.

Defendant was appointed counsel from the Public Defender's Office. The record shows that defendant's counsel filed a motion for change of judge and a new judge was assigned to the case. Counsel also filed a motion requesting that defendant be brought to the Public Defender's Office for a polygraph examination and later filed a Rule 11 motion on behalf of the defendant. The court granted the motion, and two doctors were appointed to examine the defendant. During this time, defendant filed a pro per motion for mistrial in which he claimed that his counsel had been pressuring him into a plea bargain. The matter of defendant's competence was submitted on the report made as a result of the Rule 11 motion and defendant was found competent to stand trial. Defendant's pro per motion was treated by the court as a motion for termination of counsel and denied.

### EFFECTIVE ASSISTANCE OF COUNSEL

On appeal, the defendant raises only one issue: whether he received effec-

tive and adequate assistance of counsel at trial. He cites several alleged errors made by his attorney and claims these errors show ineffective assistance of counsel under the minimal competence standard set forth by this court in *State v. Watson*, 134 Ariz. 1, 4, 653 P.2d 351, 354 (1982). In evaluating this appeal, we consider not only the alleged errors pointed out by the defendant but also the entire record on appeal. See A.R.S. § 13-4035. We also note that:

> An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. * * * Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.

*Strickland v. Washington*, —— U.S. ——, ——, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674, 696 (1984). We adopted the *Strickland* standard, which places the burden of showing the prejudice that results from ineffective assistance of counsel on the defendant, in *State v. Lee*, 142 Ariz. 210, 689 P.2d 153 (1984) [1984].

a. Motions in Limine

■ At the scene of the crime the police seized a magazine containing an article on silencers for different types of guns, a pillowcase with powder burns on it, and a soup can with steel wool in it. Other evidence presented at trial indicated the defendant had attempted to fashion a homemade silencer in the weeks prior to the shooting. In the motel room from which the defendant was arrested, ammunition was found which was later admitted into evidence. Defendant's counsel made an oral motion in limine to suppress these items of evidence which the court granted as to evidence of the purchase of ammunition, but denied the motion as to the rest of the evidence. On appeal, the defendant claims that even though those motions were considered by the court, the fact that the motions were untimely and orally made

indicates that counsel was inadequate. The defendant suggests the motions should have been in writing to give the trial court a better idea of the facts necessary to properly consider the motions, and claims he was prejudiced because the motions were not in writing.

We do not believe the method or timing of the motions prejudiced the defendant. The trial attorney made a motion to preclude the evidence. He supported the motion with oral argument. The trial court heard the motion and made a ruling. Even though the motion should have been in writing, Rule 35.1, Rules of Criminal Procedure, and may have been untimely, Rule 16.1(b), Rules of Criminal Procedure, 17 A.R.S., the judge considered the oral motion and ruled on the merits. We find no prejudice to the defendant. *Strickland,* supra.

b. Failure to object to hearsay testimony of the medical examiner

■ At trial, Dr. Heinz Karnitschnig testified about the autopsy which was performed on the decedent. The autopsy, however, was performed by another medical examiner, and Karnitschnig's testimony was based on his reading and interpretation of the autopsy report. The defendant claims this hearsay should not have been admitted at trial. We do not believe, however, that this was error. The doctor testified as to his opinion of the cause of death based on his reading of the medical reports. He was an expert witness, and as such is entitled to base his opinion on inadmissible evidence under our rules. Rule 703, Arizona Rules of Evidence, 17A A.R.S. Failure to object did not indicate ineffective assistance of counsel.

■ Defendant also claims that counsel failed to interview Dr. Karnitschnig prior to trial. Defendant contends that during cross-examination, the defense counsel asked Karnitschnig about "the autopsy you performed," which defendant claims shows counsel did not even interview the witness prior to trial.

This statement appears to be inadvertent as other cross-examination indicates counsel did interview Karnitschnig prior to trial. We find no error.

c. Failure to request a mistrial

 During cross-examination of the defendant, the following exchange occurred:

Q [by the prosecutor] MR. NOLEEN, YOU DO KNOW HOW IMPORTANT TODAY IS FOR, FOR YOU, DON'T YOU?

A YES, I DO.

Q IS THERE ANYTHING THAT I COULD SAY TO YOU RIGHT NOW TO GET YOU TO TELL THE TRUTH?

[DEFENDANT'S ATTORNEY]: I OBJECT TO THAT, YOUR HONOR.

[THE PROSECUTOR]: I WILL WITHDRAW THE QUESTION, YOUR HONOR.

THE COURT: THANK YOU.

BY [the prosecutor]:

Q MR. NOLEEN, WOULD YOU HAVE COME INTO COURT TODAY AND ADMITTED TO MURDER?

A NO.

The defendant claims his attorney should have asked for a mistrial or to have the question stricken from the record, citing *Pool v. Superior Court*, 139 Ariz. 98, 677 P.2d 261 (1984) as standing for the proposition that prosecutorial misconduct may provoke a mistrial. We do not think a mistrial would have been appropriate in this case. We do not condone the question asked by the prosecutor, but counsel objected to the question before it was answered, and any further action by the attorney was unnecessary as not being productive. We believe the defense attorney acted properly.

d. Impeachment evidence

 During the prosecution's examination of Barbara Hohnstein, the following transpired:

Q [by the prosecutor] DURING THE TIME THAT YOU'VE KNOWN HIM, HAVE YOU FORMED AN OPINION ABOUT HIS TRUTHFULNESS?

A [Barbara Hohnstein] YES, I HAVE.

Q AND WHAT IS THAT OPINION?

A HE HAS LIED TO ME ON SEVERAL OCCASIONS.

Q NOW, MRS. NOLEEN, I UNDERSTAND—IT IS POSSIBLE THAT PEOPLE WHO KNOW EACH OTHER MAY NOT TELL EACH OTHER THE TRUTH OCCASIONALLY. HUSBANDS AND WIVES POSSIBLY DON'T DO THAT.

ARE WE SPEAKING ABOUT SERIOUS—

A YES, WE ARE.

Q —OR IMPORTANT MATTERS?

WERE YOU EVER PUT IN, IN THE MIDDLE OF SITUATIONS BETWEEN PERSONS BECAUSE OF THE LIES THAT HE WOULD TELL?

A YES, I HAVE.

Q LIKE WHAT KIND OF SITUATION WOULD THIS OCCUR?

A WELL, LIKE HE HAD RENTAL PROPERTIES, AND ON SEVERAL OCCASIONS THEY'D WANT THEIR DEPOSIT BACK. AND HE WOULD—HE DIDN'T WANT TO GIVE IT BACK TO THEM, SO HE WOULD TELL—YOU KNOW, THEY WOULD CALL ME AT WORK.

ON ONE OCCASION THEY CALLED ME AT WORK, THE NIGHT THAT I LEFT. THEY WANTED THEIR DEPOSIT BACK. WANTED TO GIVE JERRY, JEROME, THE KEYS TO THE HOUSE AND THEY WANTED HIS DEPOSIT BACK.

WHEN HE GOT HOME, HE GOT MAD AT ME FOR TELLING THEM HE WAS AT HOME AND WHERE WE LIVED, AND HE RAISED HIS FIST TO ME AND THEN HE LAID DOWN. AND HE SAYS, I WILL—I TOLD APRIL TO GO TO THE DOOR AND TELL THEM THEY WERE NOT HOME—HE WAS NOT HOME, AND SHE DID.

The defendant claims this was improper impeachment evidence to which trial counsel should have objected, and failure to do

so shows another example of counsel's inadequacy. The state agrees the testimony was improper, but submits failure to object does not prove ineffectiveness. The state further submits the defendant was not prejudiced by the testimony because "[i]t is highly unlikely that the jurors decided that appellant was lying about his involvement in the present offenses merely because he had his daughter tell a white lie for him."

We agree the testimony was improper. See Rule 608, Arizona Rules of Evidence, 17A A.R.S. However, as we stated in Watson, "disagreements as to trial strategy or errors in trial tactics will not support an ineffectiveness claim, as long as the challenged conduct could have had some reasoned basis." *Watson*, supra, 134 Ariz. at 4, 653 P.2d at 354 (citations omitted). Counsel could have refrained from objecting because he did not wish to draw undue attention to the testimony or because he felt the jury might think the defendant was trying to conceal more than was actually revealed by the answers. There was no prejudice to the defendant. *See Watson*, supra, at 5, 653 P.2d at 355.

e. Failure to challenge voluntariness of statements

■ On cross-examination, the defendant admitted making several statements to a Detective Martinsen of the Phoenix Police after arraignment. The defendant now claims failure to explore the voluntariness of those statements at an appropriate voluntariness hearing is yet another example showing inadequate assistance of counsel.

We do not agree. The interview from which the statements were taken was one initiated by the defendant. At trial the defendant admitted the statements were voluntary. Any attempt on the part of trial counsel to challenge the voluntariness of the statements would have been futile. See *Edwards v. Arizona*, 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378, 386 (1981); DR 7–102(A)(1) & (2), Rule 29(a), Rules of the Supreme Court, 17A A.R.S. We find no error.

f. Admission of the gun and ammunition into the trial

■ When the defendant was arrested in Texas, one of the arresting officers made a quick search of the defendant's motel room. The officer noticed one of the accoustic tiles in the ceiling was slightly ajar, and he reached above the tile and found the .38 caliber pistol and a box of ammunition above the ceiling. The state attempted to use this evidence and the fact that the ammunition recently had been purchased in Texas to impeach the defendant's testimony that he was a peaceful person. The trial court did not allow evidence of when or where the ammunition was purchased, but did admit the gun and ammunition into evidence. No objection to the possible violation of the Fourth Amendment was made, and the record does not reflect facts sufficient to determine whether there was a violation or not, in part because the question was never raised below. The defendant asserts the failure to litigate the issue shows ineffective assistance of counsel.

In *Watson*, supra, this court stated:

In representation of a person accused of crime, every defense attorney would be expected to file pre-trial motions when the facts raise issues concerning the voluntariness of statements, the legality of searches, or the suggestiveness of identification. Failure by an attorney to pursue such matters would be considered representation which falls below the minimum standards of professional competence required of defense counsel.

*Watson*, supra, 134 Ariz. at 4–5, 653 P.2d at 354–55. It would appear that this motion should have been made. In *Watson*, however, we further stated:

Of course, not all errors by counsel are harmful to the defendant, and reversal is not required for harmless error. Courts generally require the defendant to bear the burden of showing counsel's ineffectiveness. Once the defendant makes this showing by a preponderance of the evidence, the state bears the burden of showing that the failure, if any, was harmless to the defendant beyond a rea-

sonable doubt under the circumstances of the case.

*Id.* at 5, 653 P.2d at 355 (citations omitted). We do not believe the admission of the ammunition and the gun at trial prejudiced the defendant. There was no question he had a gun and the victim was shot. The defendant admitted that he owned a gun and ammunition for the gun, and that he occasionally fired the gun. Even if the evidence had been suppressed, the other evidence of the defendant's tendency towards violence and his possession of a weapon would have been available to impeach the defendant's character. We do not think the failure to object to the possible search violation is sufficiently indicative of ineffective assistance of counsel to warrant reversal.

g. Failure to object to photographs

■ Exhibits 28, 29 and 30 were small (snapshot size) photographs depicting the murder victim. Exhibit 28 depicts a full length view of the victim, dressed and showing her left shoe in a position which supports the state's claim she was dragged into the room after being shot. Figure 29 depicts the room in which the victim was found, showing the layout and position of the deceased. Exhibit 30 shows the lethal wound where the bullet entered the victim. The defendant admits the pictures were not gruesome but claims admission of more than one was cumulative and therefore the attorney should have objected. We do not agree.

All of these pictures were relevant and had independent merit. While better photography may have enabled Exhibits 28 and 29 to be combined into one picture, we do not think the evidence is unnecessarily cumulative. We find no ineffective assistance of counsel in failing to object to admission of the photographs.

h. Failure to request instructions on lesser-included offenses

■ The defendant contends his trial attorney's failure to request instructions on the allegedly lesser-included offenses of negligent homicide, A.R.S. § 13–1102, and

manslaughter, § 13–1103, further demonstrates ineffective assistance of counsel. We do not agree.

■ An accused murderer is entitled to an instruction on the lesser-included offense of manslaughter if the evidence shows the killing was done in the heat of passion or recklessly. A.R.S. § 13–1103(A)(1) & (2). *State v. Doss,* 116 Ariz. 156, 162, 568 P.2d 1054, 1060 (1977). Likewise, negligent homicide requires evidence showing a death caused by criminal negligence. A.R.S. § 13–1102. The evidence in the instant case does not show the necessary elements for those crimes. The evidence produced by the state tended to show a premeditated murder. The defendant's testimony showed an accidental killing. There was no evidence of a killing in the heat of passion or of a killing with criminal negligence. As the Court of Appeals has stated:

> A defendant is only entitled to a lesser included offense instruction if there is evidence upon which the jury could convict of the lesser offense and find the state had failed to prove an element of the greater offense. A trial court need only give a lesser included offense instruction when the element that distinguishes the two charges is in dispute. Therefore, when the evidence is such that the defendant may be found either guilty only of the crime charged or not guilty, based upon the defense presented at trial, there is no requirement to give an instruction on a lesser included offense.

*State v. Conroy,* 131 Ariz. 528, 532, 642 P.2d 873, 877 (App.1982) (citations omitted). *See also State v. Brady,* 105 Ariz. 190, 196–97, 461 P.2d 488, 494–95 (1969). Under the facts of this case, the defendant could not properly have been found guilty of manslaughter or negligent homicide. It would have been error for the trial court to have given instructions for manslaughter and negligent homicide and the attorney for the defendant did not err in failing to request those instructions. *See State v.*

*Gadsden,* 300 N.C. 345, 351, 266 S.E.2d 665, 669–70 (1980).

### i. Self-defense instruction

 The defendant claims failure to request a self-defense instruction is further evidence of ineffective counsel. This defense was noted in the pre-trial notice of defenses, but no evidence of self-defense was presented other than the mere fact that defendant claimed Barbara pulled a gun on him. It would appear from the testimony that counsel decided to pursue the theory of accidental homicide, a defense which was more plausable under the testimony of the defendant, rather than self-defense.

There was no basis for a self-defense instruction. *See People v. Purrazzo,* 95 Ill.App.3d 886, 892–93, 51 Ill.Dec. 47, 53, 420 N.E.2d 461, 467 (1981). *Cf. State v. Sanders,* 541 S.W.2d 530, 533 (Mo.1976) (defenses of accidental homicide and self-defense are inconsistent). We find no error.

### j. Flight instruction

 The defendant insists that another fact showing ineffective assistance of counsel is that a flight instruction was given without objection to the instruction as a whole. The flight instruction given stated:

> Running away or hiding after a crime has been committed does not, in itself, prove guilt. You may consider any evidence of the defendant's running away or hiding together with all of the other evidence.

Counsel did object to the word "crime" in the instruction without success. The defendant claims there was no evidence of hot pursuit and therefore the flight instruction was not warranted, citing *State v. Ceja,* 113 Ariz. 39, 40–41, 546 P.2d 6, 7–8 (1976).

We do not agree. The flight instruction was warranted even though the defendant was not pursued from the scene of the crime and even though he registered in the Texas motel under his own name. On the issue of whether to give a flight instruction we have stated:

> The test is two-fold. First, the evidence is viewed to ascertain whether it supports a reasonable inference that the flight or attempted flight was open, *such as* the result of an immediate pursuit. If this was not the case then the evidence must support the inference that the accused utilized the element of concealment or attempted concealment. The absence of any evidence supporting either of these findings would mean that the giving of an instruction on flight would be prejudicial error. Exceptions to this rule of law are when the defense fails to make timely objection, or when the appellant testifies to his escape from jail.

*State v. (Henry) Smith,* 113 Ariz. 298, 300, 552 P.2d 1192, 1194 (1976) (citations omitted, emphasis added).

Though the defendant was not chased by law enforcement officers after the shooting, he did immediately leave the state and go to Texas. His abandoned car was found on Interstate 10 in Arizona. The defendant was found only because some of the employees at Susan Lindquist's place of employment recognized him and reported him to the police. We think there was sufficient evidence of the defendant's flight to warrant giving the instruction. *Cf. State v. Lujan,* 124 Ariz. 365, 371, 604 P.2d 629, 635 (1979) (defendant's manner of leaving the scene may manifest guilt). *But see State v. Bailey,* 107 Ariz. 451, 452, 489 P.2d 261, 262 (1971) (unless fleeing from immediate pursuit, concealment is required to justify flight instruction). We find no evidence of ineffective counsel.

We have considered the entire record and conclude the Watson standard of minimal competence was met by the defense attorney in this case. We find the defendant received effective assistance of counsel at trial.

We have reviewed the entire record in accordance with A.R.S. § 13–4035 for fundamental error and find none. The judgment of the Superior Court is affirmed.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and FELDMAN, JJ., concur.